UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MAMADOU BARRY,
                Plaintiff,

v.

JAIME LAMANNA, MELECIO PHIL,
DUNCAN S. BEY, JR., and CHANTEL K.
ELMORE,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 4189 (VB)

Briccetti, J.:

       Plaintiff Mamadou Barry, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against defendants Superintendent ("Supt.") Jaime LaManna, First Deputy Superintendent ("Dep. Supt.") Melecio Phil, Captain ("Capt.") Duncan S. Bey Jr., and Sergeant ("Sgt.") Elmore Chantel, all of Green Haven Correctional Facility ("Green Haven"). Plaintiff alleges violations of his First Amendment right to free exercise of religion and Fourteenth Amendment right to equal protection.

       Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #14).

       For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

1

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and its exhibits, and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

Plaintiff is a convicted inmate housed at Green Haven. At some time prior to the events giving rise to the instant complaint, plaintiff applied for, and Green Haven staff approved, a special diet consistent with plaintiff's Rastafarian faith. During a five-day facility-wide lockdown at Green Haven, plaintiff alleges defendants failed to provide him fifteen consecutive meals comporting with his religious beliefs. The following allegations concern defendants' conduct during the lockdown.

On July 30, 2018, around noon, an unnamed officer presented plaintiff with a cold lunch tray. Plaintiff informed the officer that he receives special meals on account of his Rastafarian faith. The officer replied: "[I]'m just passing the cold tray's, as far as your religious diet meal you have to talk to the area sergeant or the higher ups." (Doc. #2 ("Compl.") at 5).[2] Plaintiff requested a supervisor.

Capt. Bey then came to speak with plaintiff. Plaintiff informed Capt. Bey that he did not receive a religious meal for lunch, and showed Capt. Bey his religious "diet card." (Compl. at

---

[1] Because plaintiff is proceeding pro se, the Court also considers allegations made for the first time in plaintiff's opposition to the motion to dismiss. See, e.g., Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2] Citations to "Compl. at __" refer to page numbers automatically assigned by the Court's Electronic Case Filing system.

5). Capt. Bey replied: "[T]his is an institutional lock-down, which mean's you will eat what we give you or dont eat at all, it is your choice." (Id. at 6).

On July 31, 2018, when plaintiff again did not receive religious meals, he informed Supt. LaManna and presented his religious diet card. Supt. LaManna told plaintiff he would look into the matter.

That evening, plaintiff spoke with Sgt. Elmore. Plaintiff explained he had not received a religious diet for two days and showed Sgt. Elmore his religious diet card. Sgt. Elmore said she would look into the matter.

On August 1, 2018, plaintiff wrote a letter to Supt. LaManna, acknowledging their interaction the day prior, alleging violations of his constitutional rights for having been denied religious meals, and asking Supt. LaManna to deal with the matter "as soon as possible." (Compl. at 20). Plaintiff's letter further stated other inmates of other religions were "receiving their religious meals" during the lockdown. (Id.).

On August 2, 2018, plaintiff again spoke to Capt. Bey about the absence of religious meals since the beginning of the lockdown. Capt. Bey told plaintiff: "[Y]ou eat what we give you." (Compl. at 7).

On August 3, 2018, plaintiff submitted a grievance concerning his missed religious meals, which was consolidated with other grievances concerning the same complaints. The grievance committee split in its decision on the merits of the consolidated grievances. (Compl. at 17). Although two members of the committee concluded the grievances were meritless, two others concluded inmates "should have been provided [proper] meals" because, during the lockdown, inmate labor was used in the food service area to prepare meals for in-cell feeding. (Id.). In other words, there was no shortage of staff to prepare religious meals.

Plaintiff appealed the grievance to the superintendent, who denied the grievance and noted:

> [An] emergency situation such as a facility lockdown may necessitate a change in menu, including religious and therapeutic menus, due to shortage of inmate labor in food service area and total in cell feeding. Efforts shall be made to provide meals of same type to meet religious and dietary needs.

(Compl. at 18).[3]

In sum, plaintiff alleges that for five days, during an institutional lockdown, defendants failed to provide him religious meals comporting to the dictates of his faith, and that he was treated differently than others similarly situated because of his religious beliefs.

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[4] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

---

[3] Although the complaint identifies LaManna as "Superintendent" (Compl. at 3), the grievance appeal annexed to the complaint does not indicate clearly who at Green Haven reviewed and executed the appeal. (See id. at 18).

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe a pro se litigant's submissions and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges a civil rights violation. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II. First Amendment Free Exercise Claim

Defendants argue plaintiff has not alleged a plausible First Amendment free exercise claim. They assert plaintiff's alleged deprivation of religious meals for five days during an institutional lockdown was nothing more than de minimis in nature, and the absence of religious meals during the lockdown was reasonably related to a legitimate penological interest.

The Court disagrees.

The First Amendment's free exercise guarantee applies to state actors through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). "Inmates clearly

retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). One such protection is "a right to a diet consistent with [an inmate's] religious scruples." Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003).

To state a free exercise claim, plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Brandon v. Kinter, 938 F.3d 21, 32 (2d Cir. 2019).

An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). Corrections facilities may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349. Institutional security is one such interest. Ross v. Coughlin, 669 F. Supp. 1235, 1239 (S.D.N.Y. 1987) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).

In some cases, alleged misconduct is so de minimis as to preclude a free exercise claim. For instance, when a Muslim inmate did not receive three religious meals—two breakfasts and one dinner—during the holy month of Ramadan, such violations were de minimis. Washington v. Afify, 968 F. Supp. 2d 532, 538 (W.D.N.Y. 2013). And when a Jewish inmate was denied Kosher meals on four occasions during a two-year period, just the same. See Tafari v. Annets, 2008 WL 2413995, at *17 (S.D.N.Y. June 12, 2008) (recommending summary judgment for defendants), report & recommendation adopted, 2008 WL 4449372, at *2 (Oct. 2, 2008).

In Evans v. Albany County Correctional Facility, 2009 WL 1401645 (N.D.N.Y. May 14, 2009), a case on which defendants heavily rely, a court granted defendants summary judgment and concluded defendants' infractions were de minimis when a Rastafarian inmate entitled to a

6

religious diet received one non-religious meal per week, for several weeks. Id. at *8. The court aptly noted the incorrect meals were not delivered on consecutive days, but rather once per week over the course of four months. Id. For that reason, the court determined a rational juror could not conclude the resulting burden on plaintiff's religious beliefs was beyond de minimis. Id. at *8–9.

Here, unlike in Evans, the instant motion is one to dismiss under Rule 12(b)(6), which necessitates a different standard of review than a motion for summary judgment. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (noting difference between motion to dismiss standard of review and summary judgment standard). Moreover, at this early stage and on the facts alleged, the Court cannot conclude the denial of fifteen consecutive religious meals over a continuous five-day period constitutes a de minimis violation of, or resulted in a de minimis burden on, plaintiff's First Amendment right to free exercise or religion.

Likewise, the Court cannot conclude the failure to provide plaintiff religious meals during the lockdown was reasonably related to a legitimate penological interest. Whether the lockdown was legitimate, and alternative meals reasonable, involve questions of fact and law which, though suitable for summary judgment, are not appropriate here. Further, although defendants note the conduct at issue occurred during a facility-wide lockdown—a detail plaintiff himself pleads—this fact alone does not preclude plaintiff's claim.

For these reasons, defendants' motion to dismiss plaintiff's First Amendment free exercise claim must be denied.

III.  Fourteenth Amendment Equal Protection Claim

Liberally construed, the complaint presents a plausible Fourteenth Amendment equal protection claim. Specifically, plaintiff alleges inmates with other religious beliefs received religious meals during the lockdown, but he, a Rastafarian, did not.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, a plaintiff must plausibly allege "compared with others similarly situated, [he] was selectively treated; and [] that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980). If a prisoner claims he received different treatment by prison officials because of a protected characteristic, he must "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and that such treatment "was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

Defendants do not seek dismissal of, nor do they mention, a Fourteenth Amendment claim, presumably because such claim is not plainly alleged on the face of the complaint. Nevertheless, the claim shall proceed, as the allegations in the complaint project a plausible equal protection claim.

IV.  Personal Involvement

Defendants argue plaintiff has failed to allege defendants were personally involved in any constitutional violation.

The Court agrees with respect to defendant Dep. Supt. Phil only.

8

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994). "Supervisor liability under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).[5]

However, "[a] supervisor defendant's 'mere receipt of a letter or grievance, without personally investigating or acting [thereon] is insufficient to establish personal involvement." Constant v. Prack, 2019 WL 3287818, at *10 (S.D.N.Y. July 19, 2019) (quoting Alvarado v. Westchester County, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (second alteration in original)).

Here, plaintiff's allegations fail to state plausibly a Section 1983 claim against Dep. Supt. Phil. Plaintiff alleges only that Dep. Supt. Phil is "responsible for the establishment and maintenance" of Green Haven policies and failed to respond to plaintiff's August 2, 2018, letter. (Compl. at 9). As noted above, mere receipt of plaintiff's August 2, 2018, letter, does not signify Dep. Supt. Phil had anything to do with alleged constitutional deprivations. See Constant v. Prack, 2019 WL 3287818, at *10. Accordingly, plaintiff has failed to state a valid constitutional claim against Dep. Supt. Phil.

---

[5] After Ashcroft v. Iqbal, district courts within the Second Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

The same is not true of plaintiff's allegations respecting Supt. LaManna, Capt. Bey, and Sgt. Elmore. Plaintiff alleges speaking personally to each of them about his missed religious meals and requesting their help in obtaining such meals. As noted above, personal involvement of a supervisory defendant may be shown by evidence that such "defendant, after being informed of the violation . . . , failed to remedy the wrong." Colon v. Coughlin, 58 F.3d at 873.

Accordingly, plaintiff has plausibly pleaded the personal involvement of Supt. LaManna, Capt. Bey, and Sgt. Elmore, in the alleged constitutional violations.

V.       Leave to Amend

In his opposition, plaintiff requests leave to amend his complaint if the Court grants defendants' motion.

The Court declines to grant plaintiff leave to amend.

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to a pro se litigant, who "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when a plaintiff is proceeding pro se. See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

The complaint, even liberally construed, contains no allegations suggesting plaintiff has a valid constitutional claim against Dep. Supt. Phil that plaintiff "inadequately or inartfully pleaded" and "should therefore be given a chance to reframe." See Cuoco v. Moritsugu, 222 F.3d at 112. The problems with plaintiff's claims are substantive, and better pleading will not cure them. For these reasons, amendment would be futile.

Accordingly, the Court concludes plaintiff would not be able to state a valid claim against Supt. Dept. Phil if given an opportunity to amend his pleading.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

By December 31, 2019, Supt. LaManna, Capt. Bey, and Sgt. Elmore shall file an answer to the complaint.

The Clerk is instructed to terminate the motion (Doc. #14), and terminate from the case defendant Dep. Supt. Melecio Phil.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444-45 (1962).

Dated: December 11, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge